## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2017, 5:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry A. Benyon,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 20, 2017

Court of Appeals Case No.
49A02-1703-CR-570

Appeal from the Marion Superior Court

The Honorable Marc Rothenberg, Judge

Trial Court Cause No.
49G02-1610-F5-42328

**Bailey, Judge.**

# Case Summary

Terry Benyon ("Benyon") appeals his conviction, following a jury trial, of count VII, theft, as a Level 6 felony,[1] and his sentences for one count of corrupt business influence, as a Level 5 felony;[2] six counts of theft, as Level 6 felonies;[3] one count of attempted theft, as a Level 6 felony;[4] and a habitual offender enhancement.[5]

We affirm in part, reverse in part, and remand with instructions.

# Issues

Benyon raises the following two issues on appeal:

I.    Whether the State presented sufficient evidence to support his conviction of count VII, theft, as a Level 6 felony.

II.   Whether his sentence is inappropriate in light of the nature of the offenses and his character.

---

[1] Ind. Code § 35-43-4-2(a)(1).

[2] I.C. § 35-45-6-2.

[3] I.C. § 35-43-4-2(a)(1).

[4] *Id.*; I.C. § 35-41-5-1.

[5] I.C. § 35-50-2-8.

# Facts and Procedural History

[4] Beginning in approximately April of 2016, Benyon began a streak of thefts from clothing stores around the Indianapolis area. Store surveillance videos captured Benyon engaged in many of these thefts. Benyon stole merchandise in large quantities and sold it "on the streets," in gas stations, in Wal-Marts, in beauty shops, in barber shops, and in liquor stores. State's Ex. 23 at 7. Benyon trained and used teenage accomplices—one as young as twelve years old—to carry out the thefts with him. He organized a system in which he would sell the merchandise in bulk and on "pay days" when he could "get rid of [it]" fast. *Id*. at 16.

[5] On May 23, 2016, Benyon and a young female accomplice stole approximately 200 pairs of underwear, valued between $9.50 and $16.50 each, from a Gap store at the Fashion Mall at Keystone, which resulted in a loss of between $1,900 and $3,300 for that store. On July 3, 2016, Benyon and a female accomplice stole approximately 200 pairs of underwear from the Victoria's Secret store at the Castleton Square Mall, totaling a loss of $2,100 for that store.

[6] On July 12, 2016, Benyon and a thirteen- or fourteen-year-old male accomplice returned to the Victoria's Secret store at the Castleton Square Mall and committed another theft. An assistant store manager noted that something was "amiss" because she saw that Benyon's bag was full of store items for which he had not paid. Tr. Vol. II at 62-63. The store manager followed Benyon and his accomplice. A store associate tried to stop Benyon, but Benyon ran away with

the bag of merchandise. Several Victoria's Secret employees and an employee from another store chased Benyon through the mall, but he fled into his truck and "erratic[ally]" and "very quickly" drove away. *Id.* at 85, 87. The store manager estimated that Benyon had stolen approximately 200 pairs of underwear, valued at $10.50 each, totaling a loss of about $2,000 for the store.

[7] On August 5, 2016, Benyon went to the Victoria's Secret store at the Circle Center Mall and committed a theft of approximately twenty "bralettes" worth $25 to $30 each. *Id.* at 100-101. Store employees chased Benyon through the mall, but he got away from them. On August 6, 2016, Benyon returned to the Gap store at the Fashion Mall and took approximately four drawers' worth and two table tops' worth of underwear from the store and placed them in a bag. Benyon left the store without paying for the merchandise which store employees valued at approximately $2,000.

[8] On September 26, 2016, Benyon and a female accomplice went to the Ulta Beauty store located on Hardegan Street. At that store, Benyon took twenty-nine fragrances from the men's fragrance area, which the store manager valued between $60 to $100 each, totaling a loss of about $2,865 for the store. On October 2, 2016, Benyon and a female accomplice stole approximately 560 items of clothing from the Victoria's Secret store at the Fashion Mall, totaling a loss of $7,000 for the store.

[9] Sometime in October of 2016, the asset protection coordinator for Stein Mart, Diana Chiscon-Floyd ("Chiscon-Floyd"), became aware that someone was

stealing Michael Kors coats from the Stein Mart store located at West 86th Street. The coats were each valued between $119.99 and $149.99. On October 24, Chiscon-Floyd observed Benyon and a female accomplice enter the store and start "staging" the Michael Kors coats by moving them closer to the emergency exit door. Tr. Vol. II at 152. The female accomplice then left the store with Benyon and entered his truck, and Benyon then returned to the store by himself. Chiscon-Floyd recognized Benyon and his accomplice, and she called the police. The police arrived and arrested Benyon. The police searched Benyon's truck pursuant to a search warrant, and they found a bag containing numerous pairs of underwear with tags still on them.

[10]    After waiving his Miranda rights, Benyon provided a statement to police in which he admitted to being "the thief"; admitted to reselling stolen merchandise; admitted to earning $600 per 200 pairs of stolen underwear; admitted to using the proceeds to pay for his rent, truck, and insurance; admitted to training and using teenage assistants to help him with the thefts; and noted that Victoria's Secret used "little girls to play security in [the] stores" while placing "tens of thousands of dollars' worth of merchandise in front of [him]" and "dar[ing him] to take it." State's Ex. 23 at 6, 18.

[11]    The State charged Benyon with multiple counts of theft and one count of corrupt business influence. At Benyon's jury trial, the State introduced testimony of the various stores' employees who witnessed the thefts, and some of the stores' surveillance video tapes showing Benyon stealing merchandise. One of the admitted surveillance videos was of Benyon at the Victoria's Secret

store on August 5, 2016. That video showed that, during the course of about eighteen seconds, Benyon cleared off all of the bralettes lying on top of a table at the front of the store and placed them in a white bag. The merchandising manager at the store, Taryn Tibbs ("Tibbs"), testified that there was no merchandise in the drawers beneath the table. She testified that she had made eye contact with Benyon just as he had finished taking the items from the table, and she had then seen him leave the store without paying for the items. Tibbs and another manager had chased Benyon, but he had run down the stairs of the mall. Tibbs testified that there had been about twenty bralettes worth $25 to $30 each on the table at the time of the theft.

[12] The jury found Benyon guilty of one count of corrupt business influence, as a Level 5 felony, six counts of theft, as Level 6 felonies, and one count of attempted theft, as a Level 6 felony. The jury found Benyon not guilty of two additional counts of theft, as Level 6 felonies. Benyon subsequently pled guilty to the habitual offender enhancement.

[13] Benyon had a sentencing hearing on February 17, 2017, at the end of which the trial court noted that, while Benyon had expressed remorse for the crimes, it "was apparent" in Benyon's statement to the police that Benyon "almost took pride in his [theft] setup."[6] Tr. Vol. III at 7. The court noted that Benyon had

---

[6] For example, Benyon stated to police that he made $600 for 200 pairs of underwear and "that's more [income] than most people bring home in a week." State's Ex. 22 at 10. He further stated to police that he "mock[ed] this country for its freedom … to move about and the fact that you would [l]ay tens of thousands

stolen a large amount of inventory to supply his "corrupt business practice," and his crimes involved multiple victims. *Id*. at 8. The trial court also noted that Benyon's extensive criminal history, much of which involved similar crimes, was an aggravator. Specifically, the trial court pointed out that, including the instant convictions other than the habitual offender enhancement, Benyon had twenty-one felony convictions. The court also noted that, in the past, Benyon had been given "multiple opportunities at alternative sentencings." *Id*. Given the aggravating circumstances, the trial court specifically found that "short term imprisonment" or a sentence split between imprisonment and alternative placements was warranted. *Id*. at 9-10.

[14] The trial court sentenced Benyon to consecutive terms of five years' imprisonment for Level 5 felony corrupt business influence, with an additional two years for the habitual offender enhancement; two years for each of the six counts of Level 6 felony theft; and two years for Level 6 felony attempted theft. This resulted in an aggregate sentence of twenty-one years. The trial court ordered the sentences for three counts of Level 6 felony theft to be served in community corrections, the sentences for two other counts of Level 6 felony theft to be suspended to probation,[7] and the sentences for one count of Level 6

---

of dollars' worth of merchandise in front of me[,] overprice it[,] … and dare me to take it[,]" while "using basically little girls to play security in your stores. … Why don't you go and hire security[?]" *Id*. at 17-18.

[7] The sentence for count VII, for which Benyon maintains there was insufficient evidence, was one of the sentences suspended to probation.

felony theft and attempted Level 6 felony theft to be entirely suspended, with no probation.

[15] This appeal ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[16] Benyon challenges the sufficiency of the evidence to support his conviction on count VII, theft, as a Level 6 felony, for his theft of bralettes from Victoria's Secret on August 5, 2016. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[17] To support Benyon's conviction of theft, as a Level 6 felony, the State was required to prove beyond a reasonable doubt that: (1) Benyon; (2) knowingly or intentionally; (3) exerted unauthorized control over property of another person; (4) with the intent to deprive the other person of any part of its value or use; (5) and the value of the property was at least $750 and less than $50,000. I.C. § 35-43-4-2(a)(1)(A).[8] Benyon contends that the State failed to provide sufficient evidence that the value of the property he stole from Victoria's Secret on August 5, 2016 was worth at least $750. We agree.

[18] The only evidence of the value of the property stolen on August 5 was Tibbs' testimony and the surveillance video admitted as State's Exhibit 6. Tibbs, the store merchandising manager, testified that the store surveillance video in Exhibit 6 showed Benyon clearing off bralettes on a table in the front of the store, putting them in a white bag, and then leaving the store without paying for them. Tibbs further testified that there were "like twenty" bralettes on the table on the day that Tibbs stole them, and she said they were worth between $25 to $30 each. Tibbs stated that there were no bralettes in the drawers under the table at the time Benyon stole the bralettes. Thus, even if we assume that each bralette was $30, the evidence established that the total value of the stolen

---

[8] Subsection (a)(1) also provides that the crime of theft is a Level 6 felony if the person charged has a prior unrelated conviction for theft under that section. I.C. § 35-43-4-2(a)(1)(C)(i). The record shows that Benyon had eight unrelated prior convictions for theft under Indiana Code Section 35-43-4-2 during the period of June 1991 through January 2016. Appellant's Conf. App. at 162-168. However, the challenged count VII does not base the Level 6 felony charge on prior unrelated convictions, but solely on the allegation that the value of the stolen property was at least $750 and less than $50,000. *Id*. at 26. And the jury verdict on that count found him "guilty of theft, a Level 6 felony, *as charged* in count VII." *Id*. at 151 (emphasis added).

property was $600 at most, i.e., less than the $750 minimum necessary to convict Benyon of a Level 6 felony.

[19] The State acknowledges that it "may have presented insufficient evidence to support [Benyon's] conviction for one count of Level 6 felony theft." Appellee's Br. at 13. Nevertheless, it suggests that the jury could have properly inferred from the surveillance video that Benyon stole more than twenty bralettes and, therefore, at least $750 worth of property. However, any such inferences would be "pure speculation and devoid of evidentiary support." *Lane v. State*, 175 Ind. App. 543, 372 N.E.2d 1223, 1226 (1978). The only evidence of the value of the stolen property establishes that it was less than $750. Therefore, the State has failed to prove an essential element of Level 6 felony theft, and we reverse Benyon's conviction on count VII.

[20] However, Benyon's challenge to the sufficiency of the evidence is directed only to the element of the value of the stolen property. Benyon does not challenge the evidence that he stole merchandise from Victoria's Secret on August 5; rather, he merely points out that the evidence showed that the value of that merchandise was less than $750. Appellant's Br. at 9-10. Thus, the evidence was sufficient to support a conviction for the lesser included offense of theft of property valued at less than $750, a Class A misdemeanor. I.C. § 35-43-4-2(a).

[21] "On appeal, this Court may order a modification of the judgment of conviction to that of a lesser included offense because of an insufficiency of evidence on a particular element of the crime." *Baird v. State*, 955 N.E.2d 845, 849 (Ind. Ct.

App. 2011) (internal quotations and citations omitted). Therefore, we reverse Benyon's conviction on count VII for theft, as a Level 6 felony, because the evidence was insufficient to sustain that conviction. However, we remand this case with instructions that the trial court enter a judgment on count VII of theft, as a Class A misdemeanor, sentence Benyon accordingly, and continue to treat the sentence for count VII as suspended to probation.

## Inappropriateness of Sentence

[22] Benyon maintains that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original). He must demonstrate that his sentence is

inappropriate in light of both the nature of the offense and his character. *Baumholser v. State*, 62 N.E.3d 411, 418 (Ind. Ct. App. 2016), *trans. denied*.

[23] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[24] The trial court specifically found that the nature of Benyon's offenses were such that they warranted imprisonment for at least part of his sentence. We agree. As the trial court noted, Benyon stole a very large amount of merchandise from multiple victims, and he did so in order to run his own "business" with stolen inventory. Benyon created and maintained an organized theft operation in which he trained and used teenagers—and one minor as young as twelve years

old—to help him steal. His sentence was not inappropriate in light of the nature of his offenses.

[25] Benyon also asserts that his sentence was inappropriate in light of his good character. Specifically, he points out that he has "acknowledged he has a problem stealing" and "would like to address that problem" through community corrections rather than incarceration. Appellant's Br. at 12. Although the trial court noted that Benyon had expressed remorse, and that he had agreed to make restitution "if he can," it also noted that it was apparent from Benyon's statement to police that he "almost took pride in his [theft] setup." Tr. Vol. III at 7, 9. In fact, in his statement to police, Benyon seemed to blame the stores' lack of security for his crimes. That is hardly evidence of remorse. Moreover, Benyon has an extensive criminal history, with thirteen felony convictions, not including the eight felony convictions in the instant case. Eight of his past convictions were also for theft. And, although Benyon has received alternative sentences to prison in the past, he has violated probation multiple times and he has continued to commit crime after crime. None of this reflects well on his character. *See, e.g.*, *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*.

[26] Benyon's sentence is not inappropriate in light of the nature of his offenses and his character.

# Conclusion

We reverse Benyon's conviction on count VII for theft, as a Level 6 felony, because the evidence was insufficient to sustain that conviction. We remand this case with instructions that the trial court instead enter a judgment on count VII of theft, as a Class A misdemeanor, sentence Benyon accordingly, and continue to treat the sentence for count VII as suspended to probation. We affirm the trial court's sentence of Benyon in all other respects, as it is not inappropriate in light of the nature of the offenses or his character.

Affirmed in part, reversed in part, and remanded with instructions.

Baker, J., and Altice, J., concur.